UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWARD L. SHRINER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:01-cv-807-LJM-VSS |
| ) | |
| SIGNAL FINANCE CO., an Ohio Corporation, ) | |
| and FIRSTMERIT BANK N.A., a National ) | |
| Banking Association, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on cross motions for summary judgment by Defendants Signal Finance Co. ("Signal Finance") and FirstMerit Bank, N.A. ("FirstMerit") (collectively "Defendants"), and Plaintiff Edward L. Shriner ("Shriner"). This case involves the interpretation and construction of one paragraph of a written contract entitled "Indication of Interest to Acquire Signal Finance Co." ("Indication of Interest"). Shriner brought this suit requesting judgment as a matter of law on Count I of his Complaint, declaring that the binding terms of the Indication of Interest paragraph three reinstate and make binding on Defendants the provisions of his previous written Employment Agreement with Signal Finance ("Employment Agreement"). The issue is fully briefed and ripe for ruling.

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment as to Count I of the Complaint. Defendants' pending motions to strike testimony in support of Plaintiff's Motion for Summary

Judgment, Dkt. Nos. 24 and 26, are rendered **MOOT**, as the Court's analysis does not require consideration of the contested testimony.

### I. BACKGROUND

From March or April 1997, to March 20, 2000, Shriner served as President of Signal Finance. Shriner Aff., ¶ 2. Signal was a wholly-owned subsidiary of First Federal Savings and Loan of Wooster, Ohio, which was a wholly-owned subsidiary of Signal Corporation. *Id.*, ¶ 3.

Shriner and Signal had entered into the Employment Agreement in June 1998. Shriner Drp. at 27-28; Def.'s Exh. 10. The agreement provided for a significant severance payment to Shriner in the event that Shriner's employment was terminated without cause as defined in the agreement. The Employment Agreement states, in relevant part:

> If [Shriner's] employment is terminated for reasons other than (i) for Cause, (ii) death or disability, or (iii) [Shriner's] voluntary resignation, then for a period equal to the shorter of: (i) two years or (ii) the remainder of the Initial Term, or the then current Extended Term, [Signal Finance] shall pay to [Shriner] his Base Salary . . . and, if any, his bonus. . . .

Def.'s Exh. 10, ¶ 8 (the "Termination Payment").

Under the Employment Agreement, one of the circumstances that would trigger the Termination Payment to Shriner was if a majority of Signal Finance's or Signal Bank's stock or assets was transferred. *See id.*, ¶ 8 ("Change of Control Provision"). In the summer of 1998, FirstMerit announced the purchase of Signal Corporation and its subsidiaries, which included Signal Finance. Steiner Aff., ¶ 4. The purchase closed on February 12, 1999. *Id.*, ¶ 6; Shriner Dep. at 31. The acquisition of Signal Finance by FirstMerit triggered the payment of the Termination Payment to Shriner. *Id.*; Shriner Dep. at 31-32. Pursuant to the Change of Control Provision in the Employment Agreement, FirstMerit, Signal Finance, and Shriner executed an agreement relating to

Shriner's severance, dated February 5, 1999 (the "Severance Agreement").  Comp., ¶ 19; Shriner Dep. at 32-33.  Pursuant to its terms, the Severance Agreement superseded the terms of the Employment Agreement.  Def.'s Exh. 9, ¶ F.  Under the Severance Agreement, Shriner was paid $474,000.00 (less legally-required withholdings and deductions).  Def.'s Exh. 9, ¶ 2; Shriner Dep. at 36, 38.  Further, Shriner released FirstMerit and Signal Finance from "all claims, liabilities, demands and causes of action, known or unknown. . . relating in any way to his employment with [Signal], the termination thereof and/or the circumstances surrounding such termination. . . ."  Def.'s Exh. 9, ¶ 5; Shriner Dep. at 33.

Prior to the closing of FirstMerit's purchase of Signal Corporation, and after examination of Signal Finance's business, FirstMerit concluded that it would not retain Signal Finance after closing and began negotiating with Third Federal Savings and Loan ("Third Federal") concerning the possible purchase of Signal Finance by Third Federal.  Comp., ¶¶ 16-17.

After the execution of the Severance Agreement, the parties agreed that Shriner would continue to act as the President of Signal Finance on an interim basis.  Comp., ¶ 21.  At this time, Shriner was employed by Signal Finance as an at-will employee whose employment was no longer governed by the terms of a written agreement.  *Id*., ¶ 22.  Ultimately, negotiations between FirstMerit and Third Federal ended without reaching an agreement.  Shriner Dep. at 74.

Shriner then approached Defendants and suggested the possibility of a management-led buy-out of Signal Finance.  Comp., ¶ 22.  In July 1999, Shriner, as principal of Carmel Capital Management ("CCM"), FirstMerit, and Signal Finance entered into an Indication of Interest agreement relating to the proposed acquisition of Signal Finance by CCM.[1]  Def.'s Exh. 1.  The

---

[1] Paragraph five of the miscellaneous provisions of the Indication of Interest provides that it shall be "governed by and construed in accordance with the laws of the State of Indiana. . . ."

Indication of Interest contains a provision relating to Shriner's employment by Signal Finance. Def.'s Exh. 1, Part II, ¶ 3. The final version of the employment provision relating to Shriner's interim employment states as follows:

> <u>Shriner Employment</u>. By execution of this indication of interest, FirstMerit, Signal and CCM agree and acknowledge that Shriner, the current President of Signal, is and has been since June 1, 1999 an employee at will and will continue to be compensated and receive employee benefits at the same level, in the same manner and under the same terms and conditions as provided in the Employment Agreement between Signal and Shriner dated June 1, 1998 ("Employment Agreement"). In the event that the Transaction is consummated, the non-competition and non-solicitation provisions of such Employment Agreement shall terminate and be of no further force or effect. In the event that the Transaction is not consummated, the parties agree that Shriner's employment by Signal under the Employment Agreement was terminated as of February 5, 1999 for purposes of the non-competition and non-solicitation provisions only and not the remaining provisions of the Employment Agreement which shall continue until his final employment termination date and accordingly, the two (2) year non-competition and non-solicitation provisions as set forth in the Employment Agreement shall terminate as of February 4, 2001.

*Id*.; Comp., ¶ 25.

Ultimately, CCM was unable to secure financing and the acquisition of Signal Finance by CCM (the "Transaction") did not go forward. Comp., ¶ 30. Thereafter, Shriner's employment was terminated. Comp. ¶ 32.

## II. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68

---

Comp., Exh. B.

(7th Cir. 1990), *cert. denied*, 111 S.Ct. 1317 (1991).  Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997).  It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th

Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997)

### III. DISCUSSION

"When the language of a written contract is not ambiguous. . . its meaning is a question of law 'for which summary judgment is particularly appropriate.'"  *Hyperbaric Oxygen Therapy Sys., Inc. v. St. Joseph Med. Ctr. of Ft. Wayne, Inc.*, 683 N.E.2d 243, 247 (Ind. Ct. App. 1997) (quoting *Fetz v. Phillips*, 591 N.E.2d 644, 647 (Ind. Ct. App. 1992)).  It is undisputed that the contractual provision at issue in this case is not ambiguous, yet the parties disagree as to its interpretation.  *See* Def.'s Mem. Supp. at 13-15; Pl.'s Mem. Supp. at 12.  A contract is not ambiguous simply because there is a disagreement as to its meaning.  *East v. Estate of East*, 785 N.E.2d 597, 601 (Ind. Ct. App. 2003).  The unambiguous contractual terms are deemed conclusive of the parties' intent and the Court shall not look beyond the contract itself or consider extrinsic evidence in determining the contract's meaning.[2]  *See Wright v. State*, 700 N.E.2d 1153, 1155 (Ind. Ct. App. 1998).

---

[2] Therefore, the Court will not reach any of the testimony challenged in Defendants' pending motions to strike testimony as hearsay and in conflict with prior testimony for the purposes of the

The specific contractual language at issue is paragraph three of the binding provisions of the Indication of Interest, as set forth in Section I herein.

The Court construes the plain language of paragraph three as contemplating separate provisions for the terms and conditions of Shriner's employment during certain periods of time. The existence and duration of those time periods were dependent upon the occurrence or non-occurrence of certain events. The first sentence addresses the terms and conditions of Shriner's employment during the period in which the parties attempted to negotiate the purchase of Signal Finance by CCM. The second sentence addresses terms and conditions of Shriner's employment should the Transaction be consummated. The third sentence, and the one at issue here, sets forth terms and conditions of Shriner's employment should the Transaction fail to be consummated. It is undisputed that the Transaction referred to in the provision – the acquisition of Signal Finance by CCM – was not consummated. *See* Pl.'s Mem. Supp. at 12; Def.'s Mem. Supp. at 13.

Shriner argues that the third sentence effectively reinstates and makes binding the terms of his previous Employment Agreement. Upon a review of the plain meaning of the unambiguous provision, the Court agrees. Defendants contend that the third sentence can only be read to mean that if the Transaction was not consummated, the Indication of Interest would shorten Shriner's non-competition and non-solicitation periods, and only Shriner's obligations to keep confidential certain information and to surrender Signal's books and records remained in effect until his final termination date. *See* Def.'s Br. Supp. at 17. However, this position is inconsistent with the provision's actual language. It reads: "In the event that the Transaction is not consummated, the parties agree that Shriner's employment under the Employment Agreement was terminated as of February 5, 1999 for

---

instant summary judgment motions.

the purposes of non-competition and non-solicitation restrictions *only and not the remaining provisions of the Employment Agreement which shall continue until his final termination date. . . .*" Def.'s Exh. 1, Part II, ¶ 3 (emphasis added). Under the well-settled rules of contract construction, "language must not be construed as to render any words, phrases, or terms meaningless." *Ten Cate Enbi, Inc. v. Metz*, 802 N.E.2d 977, 981 (Ind. Ct. App. 2004). Defendants' proposed interpretation violates this rule by ignoring the obvious and plain meaning of the word "only" and of the phrase "not the remaining provisions. . ." This language does not state that only select provisions of the Employment Agreement survive. Defendants' are attempting to read into the provision limitations that are not expressed in the language of the Indication of Interest.

Defendants next argue that finding a reinstatement of the Employee Agreement is irreconcilable with the remaining language of the provision; particularly language found in the first sentence that Shriner "is and has been . . . an employee *at will*" of Signal Finance since June 1, 1999. Def.'s Exh. 1, Part II, ¶ 3 (emphasis added). Indeed, the Court must consider the whole document, not just the disputed language, and in examining the terms of a written contract, the Court should presume that all provisions contained in the contract are there for a purpose and, if possible, reconcile any seemingly conflicting terms to give effect to all of the terms of the contract. *See Ten Cate Enbi, Inc.*, 802 N.E.2d at 981. Nevertheless, the first sentence of paragraph three contemplates only the time in which the parties were negotiating the Transaction. It is perfectly consistent with the plain meaning of all words and phrases of paragraph three that at the time the Indication of Interest was signed, Shriner was an at-will employee; and he would continue to be an at-will employee until the definitive purchase agreement was finalized or the Transaction was not consummated.

Finally, Defendants argue that reinstatement of the entire Employment Agreement is not what they "had intended" when the Indication of Interest was executed and direct the Court to extrinsic evidence that purportedly supports their contention. However, Defendants have acknowledged that the contract is unambiguous, and, therefore, the Court is limited to the plain language of the agreement, which indicates that the remaining provisions – other than the non-competition and non-solicitation provisions of the Employment Agreement – shall continue until Shriner's final termination date. The Court is constrained by the "four corners" rule, which provides that unambiguous language of a contract will determine the intent of the contract and, therefore, parol or extrinsic evidence is inadmissible to expand, vary, or explain the contract absent fraud, mistake, ambiguity, illegality, duress, or undue influence. *See Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004). There are no such allegations in this case.

As the Indication of Interest references the Employment Agreement for a particular purpose, the Employment Agreement becomes part of the contract for that specified purpose. *See MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 785 N.E.2d 632, *trans. granted, aff'd.*, 802 N.E.2d 901 (Ind. Ct. App. 2003). Accordingly, the Court finds the plain language of paragraph three of the Indication of Interest effectively reinstates the original Employment Agreement once the Transaction was not consummated, modifying the terms and conditions of the non-competition and non-solicitation provisions only.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's, Edward L. Shriner, Motion for Summary Judgment, and **DENIES** Defendants', Signal Finance Co. and FirstMerit Bank, N.A.,

9

Motion for Summary Judgment as to Count I of the Complaint. Defendants' pending motions to strike testimony in support of Plaintiff's Motion for Summary Judgment, Dkt. Nos. 24, 26, are rendered **MOOT**, as the Court's analysis does not require consideration of contested testimony.

IT IS SO ORDERED this 2nd day of September, 2005.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed to:

Mary F. Schmid
STEWART & IRWIN
mschmid@stewart-irwin.com

Thomas F. Bedsole
LOCKE REYNOLDS LLP
tbedsole@locke.com

Amanda Michelle Leffler
BROUSE & MCDOWELL
aleffler@brouse.com

Sallie Conley Lux
BROUSE & MCDOWELL
slux@brouse.com

Matthew Parker Voors
LOCKE REYNOLDS LLP
mvoors@locke.com